577 F.2d 411
 UNITED STATES of America ex rel. James Raymond MOORE,
Petitioner-Appellant,
v.
PEOPLE OF the STATE OF ILLINOIS, Respondent-Appellee.
 No. 75-1697.
 United States Court of Appeals,
Seventh Circuit.
 May 26, 1978.
 
 Patrick J. Hughes, Jr., Chicago, Ill., for petitioner-appellant.
 Timothy B. Newitt, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.
 Before CUMMINGS, PELL,* and BAUER, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 In Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), the Supreme Court of the United States reversed the judgment of this Court affirming the district court's denial of Moore's petition for a writ of habeas corpus. In its opinion, the Court held that petitioner's right to the assistance of counsel was violated by a corporeal identification of him made in the absence of counsel after the initiation of adversary judicial proceedings against him. Accordingly, the Court declared that testimony presented at trial concerning the victim's identification of Moore at the pretrial confrontation was per se excludable under Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The Court then remanded the case here for a determination of whether the admission of the testimony about the pretrial identification of Moore was harmless constitutional error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In addition, the Court left us free to reconsider in the light of its opinion other issues we had resolved that the Court did not choose to pass upon: namely, whether the victim's in-court identification of Moore at trial was unreliable in view of the suggestive pretrial confrontation that had occurred, Manson v. Brathwaite, 432 U.S. 98, 109-114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); whether the in-court identification at trial was based on a source other than the uncounseled pretrial confrontation, United States v. Wade, 388 U.S. 218, 239-42, 87 S.Ct. 1926, 18 L.Ed.2d 1149. (1967); and whether the failure to provide petitioner's counsel a transcript of the preliminary hearing at which the suggestive confrontation occurred constituted prejudicial constitutional error under Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967).
 
 
 2
 Inasmuch as the relevant historical facts underlying petitioner's constitutional claims are not in dispute,[1] we have determined that a remand of this case to the district court is unnecessary to the resolution of the question presented to us on remand from the Supreme Court. For the reasons noted below, we hold that the admission of the testimony regarding the victim's pretrial identification of Moore was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Accordingly, we again affirm the district court's denial of Moore's petition for a writ of habeas corpus.
 
 I.
 
 3
 For purposes of our review of the harmless error question presented, we have deemed ourselves bound by the statement of facts set out in the Supreme Court's opinion, as well as the Court's resolution of the ambiguity in the record as to whether the victim selected more than one photograph from the second photographic display presented to her.[2] See Moore v. Illinois,434 U.S. 220, 221-24 n. 6, 98 S.Ct. 458, 461-62 n. 6, 54 L.Ed.2d 424, 435 (1977).
 
 
 4
 Given the undisputed facts of record, it seems to us that the harmless error question presented turns in large measure upon whether the victim's identification of Moore at trial was admissible notwithstanding the suggestive pretrial confrontation that had occurred and the failure to provide Moore counsel at that time. As we see it, the harmless error question is not a difficult one, assuming the admissibility of the in-court identification, because the testimony regarding the victim's pretrial identification of petitioner added little to her positive identification at trial. Especially in view of the fact that much of the suggestiveness inherent in the pretrial confrontation was exposed and vigorously argued to the jury at trial, we doubt that the jury, in assessing the reliability of the victim's identification of Moore at trial, attached any crucial significance to the bare fact that she had previously identified him. What, no doubt, was of critical import to the jury is that the victim testified at trial that she was "positive" Moore was her assailant, and that the victim's certitude was not dispelled by an exhaustive and withering cross-examination on the reliability of her identification. Given the extrinsic evidence linking Moore to the scene of the crime that corroborated the victim's doubt-free identification of him at trial, we are convinced beyond a reasonable doubt that the exclusion of the testimony regarding the victim's pretrial identification of Moore would not have affected the jury's verdict as long as her in-court identification was admissible at trial.
 
 
 5
 The critical question thus becomes whether the victim's positive identification of Moore at trial was irreparably tainted by the unnecessarily suggestive pretrial confrontation and the failure to afford petitioner counsel at that confrontation. This, in turn, requires two analytically distinct, though related, inquiries, the first being whether the victim's in-court identification of Moore was reliable even though the pretrial confrontation was suggestive, Manson v. Brathwaite, 432 U.S. 98, 109-114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and the second being whether the identification at trial was based upon the victim's observations of Moore independent of the uncounseled pretrial confrontation, United States v. Wade, 388 U.S. 218, 239-42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
 
 
 6
 Although we had previously decided that the victim's identification of Moore at trial was both reliable and based on a source independent of the pretrial confrontation, we have reconsidered these questions in the light of the Supreme Court's opinion, which invited us to do so. Having scrutinized the record afresh, however, we have arrived at the same conclusions for the reasons noted below.
 
 II.
 
 7
 As the Supreme Court noted in its opinion in this case,
 
 
 8
 "It is difficult to imagine a more suggestive manner in which to present a suspect to a witness for their critical first confrontation than was employed in this case." Moore v. Illinois, 434 U.S. 220, 229, 98 S.Ct. 458, 465, 54 L.Ed.2d 424, 434 (1977).
 
 
 9
 We concur fully in the Court's comment, as well as in its observation that some if not all of the suggestiveness inherent in the confrontation may have been avoided if counsel had been appointed for petitioner. Id. Nevertheless, as the Court has also recently observed, we are not free to suppress a witness's identification of a suspect at trial merely because the suspect had been exposed to the witness in a highly and unnecessarily suggestive manner. Rather, in assessing whether the suspect's right to due process of law has been violated by the admission of an in-court identification, we are bound to weigh the corrupting effect of the suggestive confrontation against indicia bearing on the reliability of the identification, for "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In the course of weighing the "totality of the circumstances" bearing on the question of whether the suggestive confrontation gave rise to a "very substantial likelihood of misidentification," we must take into account many factors, including
 
 
 10
 "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 198-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1977).
 
 
 11
 Having done so, we have concluded that the victim's identification of Moore at trial as her assailant was reliable even though her initial confrontation with him after the crime was suggestive.
 
 
 12
 We believe that the victim had a more than adequate opportunity to observe her assailant at the scene of the crime. Although she had been napping for between thirty and forty-five minutes before being awakened by a noise, the victim was "extremely alert" at the time she observed her assailant standing at close range in her apartment.[3] She saw the rapist's face for a full ten to fifteen seconds, during which time she "never took (her) eyes off him."[4] Moreover, during the actual deviate sexual assault and rape, the victim was able to catch brief glimpses of her assailant's eyes and the portion of his head uncovered by a bandana.[5] The record reflects that the room was adequately lighted to permit a clear viewing of the rapist, and that the victim's vision was good without glasses.[6] In sum, although the victim did not have an extensive period of time to study her assailant's features at the scene of the crime, what time she had was sufficient to provide a firm basis for subsequent identification, especially in view of the fact that she had seen her assailant the night before in a bar. That face-to-face encounter had lasted for several minutes and had included a purported "reading" of the victim's palm.[7] As even petitioner's able trial counsel had recognized at the state court suppression hearing, the fact that the victim had seen her assailant the night before weighed in favor of her being able to recognize and identify him despite having but ten to fifteen seconds to study his face at the scene of the crime.[8]
 
 
 13
 Another factor indicating the reliability of the victim's identification of Moore is that he fit the description of the assailant the victim gave the police immediately after the rape. To be sure, the victim's description of her assailant's height, build, race, coloring, facial hair and clothes was somewhat general. Nevertheless, the description fit Moore to a tee as far as it went and was about as detailed as one might expect from an emotionally distraught rape victim.[9]
 
 
 14
 Moreover, within four days of the rape, the victim was able to tentatively identify Moore and another man with similar physical characteristics as possible suspects after having viewed over 200 photographs at two separate displays.[10] At the first display, which apparently did not include Moore's photograph, the victim picked out about 30 pictures of men who were similar in height and build to her assailant.[11] At the second display that contained about nine to twelve photographs, the victim selected Moore's picture and that of another man. Expressing a desire to see the suspects she had picked out in person, the victim refused to make a positive identification at that time.[12] Whether the victim was unable or simply unwilling to make a positive identification from the photographs is not crystal clear from the record. Many of the photographs the police had shown her, however, were very old,[13] and it may well be that her inability or unwillingness to make a positive identification was due either to the quality of the photographs or to her expressed desire to see the suspects in person so that she would be sure she was pointing her finger at the right man.
 
 
 15
 In any event, whatever the cause, the victim's refusal to make a positive photographic identification admittedly complicates our inquiry because, although she had no doubt that Moore was her assailant once she had an opportunity to view him in person, her first confrontation with him after the rape occurred in highly suggestive circumstances. We suspect that not even the victim could say with certainty that the suggestiveness inherent in the pretrial confrontation had no influence whatsoever on her identification of Moore. We are convinced, however, that the suggestive circumstances in which the confrontation took place at most reinforced the witness's conviction in the identification she made, but did not induce the identification. Our conclusion follows from the fact that the victim testified that she had recognized Moore as the rapist as soon as he walked into the courtroom[14] and thus before the most suggestive features of the confrontation came into play the recitation of the charges against him and the extrinsic evidence linking Moore to the scene of the crime that the police were still analyzing.[15] To be sure, even at the time the victim recognized Moore as her assailant as he walked into the courtroom, she was subject to the suggestiveness inherent in every showup. Yet, even when we take into account the potentially corrupting effect of the suggestiveness latent in the pretrial confrontation, we find ourselves inexorably led by the totality of the circumstances of record to but one conclusion that the victim's immediate recognition of Moore as her assailant was reliable, as was every formal identification of him she made thereafter.
 
 
 16
 The victim's moral certitude about her identification from the time of her first confrontation with petitioner a week after the rape to her last at trial could not have been higher. She was "positive" Moore was the man who had assaulted and raped her,[16] and her conviction withstood a relentless cross-examination on the reliability of her identification at trial and an emotional pretrial appeal from petitioner's wife to be "sure" she had identified the right man.[17] The victim was sure. She would "never forget" the rapist's face.[18]
 
 
 17
 In sum, after having taken into account the totality of the circumstances, we have concluded that the victim's identification of Moore as her assailant was reliable and therefore admissible at trial, notwithstanding the unnecessarily suggestive circumstances in which she first confronted petitioner after the crime.
 
 III.
 
 18
 We turn next to the question of whether there is clear and convincing evidence of record that the victim's in-court identification of Moore was based upon observations of him independent of the pretrial confrontation at which he was unrepresented by counsel. United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Like the "reliability" inquiry mandated by Manson, the "independent source" inquiry required by Wade calls for consideration of a number of factors, including
 
 
 19
 "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." Id. at 241, 87 S.Ct. at 1940.
 
 
 20
 We are also, of course, bound to take into account "those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." Id.
 
 
 21
 Inasmuch as many of the same factors that influenced our reliability determination are relevant to the "independent source" inquiry before us now, it is perhaps not surprising that we have concluded that clear and convincing evidence exists that the victim's in-court identification of Moore was based upon her observations of petitioner other than at the pretrial confrontation.
 
 
 22
 As we indicated above, we believe that the victim had a sufficient opportunity to observe her assailant at the scene of the crime to provide a firm basis for subsequent identifications. Although she studied the assailant's features for only ten to fifteen seconds before the assault, she had seen him for several minutes the night before and also had caught glimpses of his eyes and the top of his head during the attack.[19] The descriptions of her assailant she gave after the crime were consistent despite her distraught emotional state and, though general, were accurate as far as they went. Moreover, although the victim refused to make a positive identification of Moore by picture prior to the suggestive confrontation, she had been able to tentatively identify him and another person as the most likely suspects she had seen in the course of two photographic displays that had included over two hundred pictures, many of which had depicted men meeting the description she had given of her assailant.[20]
 
 
 23
 Taken together, we believe that the above factors show that an independent source for the victim's in-court identification of Moore existed, and nothing in the conduct of the pretrial confrontation that occurred a week after the crime causes us to doubt that conclusion. To be sure, the victim confronted petitioner in highly suggestive circumstances. However, she recognized Moore as the rapist as soon as he walked into the courtroom and before the most suggestive features of the pretrial confrontation came into play. Accordingly, we are convinced that the suggestiveness inherent in the circumstances did not induce her identification of Moore, though it may well have reinforced the identification she had already made in her own mind. That, in any event, is our view of the matter. We hold that clear and convincing evidence exists that the victim's identification of Moore at trial was not produced by the unnecessarily suggestive pretrial confrontation held in the absence of counsel, but rather was based upon her observations of him at and before the time of the crime.
 
 IV.
 
 24
 We are left with one last inquiry, namely, whether the failure to provide petitioner's counsel with a free transcript of the preliminary hearing at which the suggestive pretrial confrontation took place constituted prejudicial constitutional error under Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). For the reasons stated in our prior opinion in this case as supplemented herein, we hold that, although petitioner was entitled to a free copy of the transcript, the failure to provide him with one did not prejudice the fairness of his trial.
 
 
 25
 As we said in our previous opinion, it is our view that the State's failure to provide Moore's counsel with a transcript of the preliminary hearing did not seriously impair counsel's ability to cross-examine the victim at trial on the reliability of her identification. Even without a transcript of the proceedings at which the pretrial confrontation took place, petitioner's experienced counsel was able to disclose to the jury on cross-examination of the victim at trial much of the suggestiveness inherent in the circumstances in which the pretrial confrontation took place that the victim had signed a complaint naming James Moore as her assailant, that she knew she was supposed to identify the suspect brought into court if she could, that Moore's name was called out just before she was beckoned to the bench to identify him, and that no one else in the courtroom met the description she had previously given of her assailant.[21] Indeed, the only salient fact bearing on the suggestiveness of the confrontation not brought out at trial of which counsel would have learned from a transcript of the preliminary hearing was the recitation of the extrinsic evidence linking Moore to the crime that took place before the victim was asked to identify him. This, of course, was the most deplorably suggestive feature of the confrontation, and no doubt would have come out at trial had counsel obtained a transcript of the hearing. We do not believe, however, that revelation of this fact would have changed the jury's verdict at trial in view of the victim's unequivocal testimony that she had recognized Moore as the rapist as soon as he walked into the courtroom at the preliminary hearing. As this recognition occurred prior to the prosecutor's disclosure of the evidence linking Moore to the crime and before the victim herself was called upon to make an identification, we are convinced that the jury's apparent confidence in the integrity and reliability of the victim's testimony would not have been shaken by disclosure of the prosecutor's actions at the preliminary hearing. Moreover, when account is taken of the moral certitude expressed by the witness at trial concerning her identification of Moore and the extrinsic evidence linking him to the crime that corroborated her identification, it seems clear beyond a reasonable doubt that provision of the transcript to petitioner's counsel would not have changed the outcome at trial. We adhere to our prior holding that the denial of Moore's request for a transcript of the preliminary hearing was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 The district court's judgment is
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable John S. Hastings, Senior Circuit Judge, was a member of the original panel that heard this appeal but died before the case was remanded here by the Supreme Court. Judge Wilbur F. Pell, Jr. was designated to replace Judge Hastings on the panel on remand
 
 
 [1]
 Petitioner's reply brief in the Supreme Court concedes as much:
 "There has never been a dispute as to the facts of this case on habeas corpus review; neither party requested an evidentiary hearing in the District Court, and no hearing was conducted."
 Petitioner's Reply Brief at 6, Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).
 
 
 [2]
 On direct examination at trial, the victim testified that she had picked out one suspect at the second photographic display, and the police report indicated that she had "tentatively identified" Moore at that time but would "like to see him in person for a positive ID." Record at 232, 428. However, on cross-examination, the victim testified that she had picked out two photos at the second photographic display and had refused to make a positive identification of either suspect from the photos. Id. at 307-08, 424. The detectives present at the display corroborated the fact that the victim had picked out more than one photo, although they were of the view that she had tentatively selected Moore's photograph as being the picture of the man who had attacked her. Id. at 156, 421
 
 
 [3]
 Id. at 210-11, 311
 
 
 [4]
 Id. at 215
 
 
 [5]
 Id. at 218-20, 311
 
 
 [6]
 Id. at 295, 303-05
 
 
 [7]
 Id. at 235-38
 
 
 [8]
 Id. at 116-17, 140-41. To be sure, counsel's agreement that the fact the victim had seen her assailant the night before the rape was beneficial to the State hardly amounted to a concession that the victim's identification was reliable. Nevertheless, the fact does have some significance. See United States v. Wade, 388 U.S. 218, 241 n. 33, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)
 Petitioner's able trial and appellate counsel have argued, of course, that the offense the victim took at petitioner's approach to her the night before the rape may have induced her to misassociate Moore with the rapist. We doubt that such an "unconscious transfer" took place in the victim's mind, however, because the investigating officers immediately raised the very same possibility with her as soon as she told them that she had seen her assailant the night before in the bar. At the least, the victim was sure in her own mind of what she was saying, despite the officers' initial skepticism. See Record at 298-99.
 
 
 [9]
 The only hint of discrepancy between the victim's description of her assailant and petitioner's features was in the assailant's weight, and this discrepancy was the product of an officer's estimate of the assailant's weight. Id. at 324-25. The victim herself estimated her assailant's weight as "easily over 200 pounds." Id. at 228, 389
 
 
 [10]
 Record at 111, 156, 230, 291-92, 421, 454
 
 
 [11]
 Id. at 114. The police report indicates that Moore's photograph was not obtained until the police had interviewed Diane Samuels after the first photographic display. Id. at 428
 
 
 [12]
 Id. at 156, 307-08, 421, 424
 
 
 [13]
 At least the first display contained photos that went back ten to twenty years. Id. at 110. The second batch was "newer," although it is unclear whether the victim meant that it contained more recent photographs or simply ones she had not seen before. See id. at 111
 
 
 [14]
 Id. at 233-34, 284-86, 308
 
 
 [15]
 There remains some ambiguity in the record as to whether Moore's name was called out before or after he stepped into the courtroom. See id. at 97-98, 234. Also, as to whether the victim knew at the time Moore walked into the courtroom that he was the suspect she would be asked to identify. See id. at 281-86
 
 
 [16]
 Id. at 308
 
 
 [17]
 Id. at 128-29
 
 
 [18]
 Id. at 308
 
 
 [19]
 The victim testified that her identification was based primarily on the ten to fifteen seconds she studied her assailant before the attack began, as the five second glimpses she had of him in the course of the rape did not materially aid her in making an identification. Id. at 103, 265, 311
 
 
 [20]
 Id. at 145-57, 391
 
 
 [21]
 See id. at 279-89, 586-87