**Sandy Paul BRUCE, Petitioner-Appellant,**

v.

**Jack DUCKWORTH, Warden, Respondent-Appellee.**

Nos. 80–2289, 80–2290.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1981.

Decided Sept. 14, 1981.

As Amended Sept. 17, 1981.

Rehearing and Rehearing En Banc Denied Oct. 27, 1981.

Terry Johnston, Johnston & Hoebner, Valpaiso, Ind., for petitioner-appellant.

David L. Steiner, Asst. U. S. Atty., Theodore L. Sendak, U. S. Atty., Indianapolis, Ind., for respondent-appellee.

Before FAIRCHILD, Circuit Judge, GIBSON *, Senior Circuit Judge, and CUDAHY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

These cases, consolidated for decision in the district court and in this court, refer to two entirely distinct prosecutions and trials. In April, 1975, Sandy Paul Bruce was convicted of two counts of first-degree murder. In February, 1976, he was convicted of rape and armed rape. Bruce here appeals the denial of his petitions, attacking his state court convictions, for a writ of habeas corpus. We affirm the district court's denial of relief.

Bruce was convicted by a jury of two counts of first-degree murder for the killing, on February 4, 1974, of Stanley and Lillian Machin, an elderly couple, in their

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Beverly Shores, Indiana, home. He was sentenced to life imprisonment on each conviction.

Bruce was convicted by a jury for a rape and armed rape perpetrated on December 7, 1973, at a location near the Machin residence, wherein he held a man and woman at gunpoint, and twice raped the woman. He was sentenced to an indeterminate term of two to twenty-one years for the rape and a determinate term of twenty-five years for the armed rape, these sentences to run consecutively.

Bruce's direct appeals to the state supreme court were consolidated on the motion of the court. The convictions were affirmed in a thirty-seven page published opinion, *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042 (1978), wherein it was ordered that the sentences imposed upon the rape convictions be served concurrently rather than consecutively. *Id.* 375 N.E.2d at 1088. Bruce then filed a petition in the United States Supreme Court for a writ of certiorari, which was denied. *Bruce v. Indiana,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978).

Bruce filed two petitions for habeas corpus relief, 28 U.S.C. § 2254, in the United States District Court for the Northern District of Indiana, South Bend Division. On July 29, 1980, Judge Sharp, after reviewing the entire state court record concerning both the murder and rape trials, consolidated the petitions and entered a memorandum and order denying relief.

The facts relating to the Machin murders and the rape offenses are set out in some detail in the published opinion of the state appellate court, *Bruce v. State, supra.* We therefore will present only those facts which are relevant to this appeal.

After Bruce was indicted for the Machin murders, he appeared in a lineup at which he was identified by the victim of the December 7 rapes. Bruce challenged the validity of the lineup on the grounds that he was deprived of the assistance of counsel.

A Mrs. Whitehouse was also present at the lineup. Mrs. Whitehouse and her husband were neighbors of the Machins. A man, later identified as petitioner Bruce, appeared at their home in the early morning hours of the day the Machins were murdered, saying that he had been in an automobile accident; he left before the Whitehouses could call the police.

The rape victim testified, over objection, at petitioner's murder trial and identified petitioner as the man who had raped her. Mr. Whitehouse was unable to identify petitioner at trial as the man who came to his door. However, Mrs. Whitehouse so identified petitioner, again over objection. Bruce challenged Mrs. Whitehouse's in-court identification testimony on the grounds that she had been exposed to an unnecessarily suggestive photographic display before trial. The trial court never conducted hearings on Bruce's motions to suppress the testimony of the rape victim or Whitehouse, and his objections to the in-court identifications of him at trial were overruled.

The Indiana Supreme Court found that the trial court erred in failing to conduct hearings on the admissibility of the identification testimony. However, in regard to the testimony of the rape victim (identified as CEP), the court concluded that

had a hearing been held, a reasonable trier of fact could not fail to find a basis for CEP's trial identification independent of the out-of-court lineup. * * * The conclusion that an independent basis existed for CEP's identification of appellant flows inexorably from the trial evidence, and we note that a thorough exploration of CEP's observation of appellant appears to have been made on cross-examination. Since a properly conducted hearing into the issue would not have resulted in the exclusion of the challenged evidence, the error in failing to hold a hearing must necessarily be harmless. *Stowers v. State,* (1977) [266] Ind. [403], 363 N.E.2d 978.

268 Ind. at 209, 375 N.E.2d at 1059. And, in regard to the testimony of Mrs. Whitehouse, the court found that even if its admission was improper, any error was "harmless beyond a reasonable doubt," *id.,*

(as Bruce's presence in the Machin house was overwhelmingly established by physical evidence).

During the murder trial, a juror stood up and said, "I have a problem here. I think the jury does, in that the—we hear discussion going on here in the audience and it's disturbing at least to us here. I would appreciate it if you would caution them not to discuss the case." The judge then immediately admonished the members of the audience and instructed them "not to discuss anything [in the courtroom] in the future." The defendant's subsequent motions to have the jury polled and for a mistrial were denied. The state court of appeals and the federal district court below both found that there was no showing, by petitioner or in the record, of a substantial likelihood of prejudice which would have required the trial court to make further inquiry into the matter. *See Bruce v. State*, 268 Ind. at 224–225, 375 N.E.2d at 1066–67; *Lindsey v. State*, 260 Ind. 351, 357, 295 N.E.2d 819, 823 (1973).

## I.

We begin our discussion of the merits of petitioner's appeal by noting the limited review power of federal courts in habeas corpus proceedings. We are called upon, as was the federal district court, to make our determinations based on the identical record that was considered at length by the state appellate court. Findings of fact made by a state appellate court are considered "determination[s] after a hearing on the merits" so that they fall within the strictures of 28 U.S.C. § 2254(d).[1] *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722, 730 (1981). Our authority, therefore, to come to different factual conclusions in this habeas proceeding, is limited. The state court findings are afforded a "presumption of correctness" and, in the absence of a specific finding that the contested matter falls within the purview of paragraphs 1 through 7 of 28 U.S.C. § 2254(d), we must defer to the state court findings.

> If none of those seven conditions were found to exist, or unless the *habeas* court concludes that the relevant state determination is not "fairly supported by the record," "the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous."

*Sumner v. Mata, supra,* 449 U.S. at 550, 101 S.Ct. at 771, 66 L.Ed.2d at 733 (footnote omitted) (emphasis supplied by Supreme Court).

## II.

Petitioner objects to the use of the in-court identification testimony of the rape

---

1. 28 U.S.C. § 2254(d) provides in part:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
> (1) that the merits of the factual dispute were not resolved in the State court hearing;
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
> (3) that the material facts were not adequately developed at the State court hearing;
> (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
> (7) that the applicant was otherwise denied due process of law in the State court proceeding;
> (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record[.]

victim (CEP) and Mrs. Whitehouse. He asserts that the testimony should have been suppressed because pretrial confrontation procedures between him and the witnesses were unconstitutional.

Bruce objects to the admission of CEP's identification testimony on the ground that it was tainted by CEP's pretrial identification of him during a lineup at which his counsel was not present. Bruce objects to the admission of Whitehouse's testimony on the ground that it was the product of irreparable misidentification caused by an unnecessarily suggestive photographic display shown to her before trial. Petitioner relies on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966), and *Martin v. State of Indiana*, 521 F.2d 682 (7th Cir. 1975), for his contention that the district court should have held an evidentiary hearing to determine these issues. His reliance is misplaced.

On Bruce's direct appeal to the state supreme court, the court found that the trial court erred in not conducting hearings on Bruce's pretrial motions to suppress. *Bruce v. State, supra* 375 N.E.2d at 1058. This finding might be called into question under the recent Supreme Court decision in *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (trial court not required to conduct hearing whenever defendant contends that witness's identification arrived at improperly). However, we need not guess as to the application of *Watkins* by the Indiana state courts. Both the state court and the district court found that "a properly conducted hearing into the issue would not have resulted in the exclusion of the challenged evidence[. Thus] the error in failing to hold a hearing must necessarily be harmless." *Bruce v. State, supra* 375 N.E.2d at 1059 (citations omitted).

"CEP identified [Bruce] at trial but no testimony concerning her line-up identification was elicited by the State." *Bruce v. State, supra* at 1059. *See Hatcher v. State*, —— Ind. ——, ——–——, 414 N.E.2d 561, 563–66 (1981). Therefore, we are not dealing with a *per se* exclusionary rule, as we would be if the testimony was the direct result of an illegal lineup. *Hatcher v. State, supra* at 565–66.

It is settled law that in-court identifications need not be suppressed if the prosecution can show that there is a basis for them independent of any suggestive pretrial proceedings. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976); *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1966); *U.S. Ex Rel. Moore v. People of State of Ill.*, 577 F.2d 411, 416–17 (7th Cir. 1978), *cert. denied*, 440 U.S. 919, 99 S.Ct. 1242, 59 L.Ed.2d 471 (1979). *See also Brathwaite v. Manson*, 527 F.2d 363, 367 n.6 (2d Cir. 1975), *rev'd on other grounds*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976). The state and federal district courts found such an independent basis. This finding is afforded a presumption of correctness. *See ante* at 779–780. Furthermore, there is more than ample evidence in the record to support the finding. As summarized by the state court: "Appellant remained in CEP's view for one and one-half hours on the night of the rape. She spoke with him and observed him under a wide range of conditions. CEP noticed a number of appellant's features and mannerisms and recalled his clothing." *Bruce v. State, supra* 375 N.E.2d at 1059.

As to the identification testimony by Whitehouse, the state court found that [h]er in-court identification testimony would be inadmissible if an unnecessarily suggestive pretrial confrontation took place and if the in-court identification is the product of "irreparable misidentification" caused by the suggestive procedure. * * *

However, even if a properly conducted hearing would have resulted in exclusion of Mrs. Whitehouse's testimony identifying appellant as the man at her door, and we intimate no view on the likelihood of this event, her testimony was of such minimal prejudice to appellant that its admission, if erroneous, was harmless beyond a reasonable doubt. The only import of Mrs. Whitehouse's testimony was

to place appellant in the neighborhood of the Machin house at 2:00 a. m. on February 4, 1974. * * * [A]ppellant's presence *in* the Machin house is overwhelmingly established by physical evidence: his fingerprint on the refrigerator; the finding of his abandoned pick-up truck; glass from the house on his clothing; his possession of the keys to the Machin automobile.

*Bruce v. State, supra* at 1059 (citations omitted). The district court expressly adopted these findings.

■ The district court was not required to conduct an evidentiary hearing to redetermine the constitutional propriety of the admission of the identification evidence. The required facts were fully developed by the state supreme court after a full and fair hearing. *See Sumner v. Mata*, 449 U.S. at 544–548, 101 S.Ct. at 768–69, 66 L. Ed.2d at 730–31. We have carefully reviewed the record and agree with the district court that any error that may have resulted from the admission of Whitehouse's identification testimony would have been harmless.

### III.

Bruce asserts that the district court erred in not conducting an evidentiary hearing to investigate a juror's statement during trial that the jury was being distracted by discussions in the audience. We find no error of constitutional magnitude.

The issue of whether further proceedings are required to determine whether juror prejudice has resulted from exposure to sources extraneous to the evidence adduced at trial must turn on the particular circumstances of the case at hand. "To resolve this case, we must turn, therefore, to any indications in the totality of circumstances that petitioner's trial was not fundamentally fair." *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1974) (juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged did not alone deprive defendant of due process).

■ On the one hand, any *private* communication with a juror during a trial about the matter pending before the court is presumptively prejudicial if not made pursuant to the rules of the court. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 93 L.Ed. 654 (1953). On the other hand, as Judge Sharp reiterated below, "It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors. *Lindsey v. State*, 260 Ind. 351, at 357, 295 N.E.2d 819 at 823 (1973)."

In the instant case, a juror informed the court that the jury "could hear discussion going on in the audience." The juror asked the court to caution the audience not to discuss the case. The court immediately said: "Members of the audience, the accoustics in this room are very bad and I instruct you not to discuss anything in the future." There were no further allegations of disturbance from the audience.

In a prior case dealing with the possible effects of outside influences on jurors, this court wrote: "The severity of the threat depends upon both the nature of the information so publicized and the degree of juror exposure to it. Moreover, the judge's response is to be commensurate with the severity of the threat posed." *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir. 1972) (citations omitted). Though *Thomas* dealt with a prejudicial newspaper article alleged to have been present in the jury room, the principles announced therein apply with equal force here.

■ It may fairly be assumed that conversations and other noises emanating from trial audiences are often heard by jurors. This is one of the prices we pay in honoring our long-cherished tradition of conducting criminal trials open to the public. The presumption that criminal trials will be open to the public "has long been recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980). Of course we hold another cherished tradition is a defend-

ant's sixth amendment right to confront the witnesses against him. However, there has been no showing in this case that the jurors were prejudiced by remarks heard from the audience. Any audience discussion that occurred was in the presence of the trial judge and the parties in open court. The trial judge acted swiftly to put an end to the problem. The record contains sufficient facts upon which to base a proper decision, and, therefore, the district court was not required to hold an evidentiary hearing to settle the matter. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

### IV.

Petitioner next contends that he was denied reciprocal discovery by the state trial court's order, pursuant to Indiana's notice of alibi statute, which permitted the prosecution to supply only the date of the offense rather than the exact time of the offense to be proved. The Indiana Supreme Court found that

> [i]n the present case the evidence abundantly supports the conclusion that the State could not narrow the evidence beyond a twenty-four hour period; no witnesses saw the victims for nearly forty-eight hours, and medical testimony as to the time of death was conflicting and uncertain. Under such circumstances the prosecutor's statement of the time was as precise as reasonably possible, and was adequate to satisfy section 35–5–1–2.[2]

*Bruce v. State, supra* at 1058.

■ The finding by the state court that the prosecutor did comply, to the extent possible and in good faith, with the Indiana statute is presumptively correct and fully supported by the record. The Indiana notice of alibi statute does not, on its face, deny due process to defendants. *See Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). In addition, the Indiana Supreme Court's construc-

tion and application of the statute in petitioner's direct appeal does require reciprocal discovery to the extent reasonably possible. Petitioner's claims to the contrary are without merit.

### V.

■ During petitioner's rape trial, the rape victim and the victim's boyfriend identified Bruce as the perpetrator of the crimes. Each of them also testified about identifying Bruce at the lineup held a couple of months after the attack. Petitioner appeared in only one lineup in connection with both the rape and murder charges. The lineup was post-indictment as to the murder charges and pre-indictment as to the rape charges. Petitioner's counsel was not present at the lineup.

Initially, we note that prior to the rape trial there was a full and fair suppression hearing, at which the facts relevant to the instant inquiry were fully developed. The state trial court ruled against petitioner in his motions to suppress. The district court, upon scrutinizing the state court record, was not required to conduct another evidentiary hearing on these issues. *Townsend v. Sain, supra,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

■ The state appellate court posed two alternative rationales for its decision that the trial court was correct in denying petitioner's motion to suppress: (1) the lineup did not occur at a time when petitioner was entitled to the presence of counsel regarding the rape charges, and (2) an identification proceeding preserved on video tape, as the lineup at issue was, is not a "critical stage" within the meaning of *United States v. Wade, supra. Bruce v. State, supra* at 1086. We need not reach the court's second rationale because we agree that petitioner's right to counsel concerning the rape

---

**2.** Indiana Code 35–5–1–2 provides, in part:

In the defendant's notice, required under this chapter, the defendant may also expressly require the prosecuting attorney to file and to serve upon the defendant or upon his counsel a specific statement in regard to the exact

date which the prosecution proposes to present at the trial as the date when, and the exact place * * * where the defendant was alleged to have committed or to have participated in the offense.

charges had not attached at the time of the lineup.

The state court found:

The evidence received at the suppression hearing indicated that the witnesses recognized appellant when his photograph appeared in the newspaper following his arrest in Alabama. They contacted the investigating officers, who arranged for a lineup to be held on February 28, 1974. At this time appellant had been charged with the Machin murders, and appeared in court and the public defender had been appointed to represent him. He had not been charged with the rape and was being held on the other charges.

*Bruce v. State, supra* at 1085.

There is no question but that the lineup occurred prior to the time that Bruce was indicted or otherwise formally charged with the rape offenses. The fact that Bruce was entitled to have counsel present at the lineup in regard to the murder charges is of no relevance in determining whether he had a right to counsel at the lineup in regard to the rape charges.

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. \* \* \* It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable. See *Powell v. Alabama,* 287 U.S. [45] at 66–71 [53 S.Ct. 55, 63, 77 L.Ed. 158]; *Massiah v. United States,* 377 U.S. 201; *Spano v. New York,* 360 U.S. 315, 324 [79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265] (DOUGLAS, U., concurring).

*Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1971) (footnote omitted).

Petitioner alleges that police officers deliberately failed to give adequate notice of the lineup to appellant and his counsel in order to circumvent the presence-of-counsel requirement. After a full and fair hearing, the state court found "no indication in the record that such purposeful evasion took place; the investigating officer testified that he arranged the line-up identification in order to provide probable cause for formal charging, and the probable cause affidavit accompanying the informations indeed relied on the line-up evidence." *Bruce v. State, supra* at 1086. We therefore need not address the issue of whether *Kirby* applies if police defer formal charging in order to evade the requirement of presence of counsel.

## VI.

Petitioner's final contention is that the imposition of sentences on convictions for rape and armed rape constituted multiple punishments for the same offense under the double jeopardy clause of the fifth amendment, applied to the states through the fourteenth. Petitioner relies on *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1976), wherein the Court applied

[t]he established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment [as] stated in *Blockburger v. United States,* 284 U.S. 299, 304 [52 S.Ct. 180, 182, 76 L.Ed. 306] (1932):

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...."

The pivotal phrase in determining the applicability of the *Blockburger* test to the facts of this case is: "the same act or transaction"; not one but two separate acts of rape were committed by petitioner here. Insofar as the state court found that petitioner was armed with a shotgun during both acts of rape, *Bruce v. State, supra* at 1088, petitioner could have been, but did not have to be, charged with two counts of armed rape. It was within the prosecutor's discretion to reduce the charge of armed rape to rape in one of the counts. Petition-

er completed the crime of rape twice, not once. The sentences imposed did not violate the double jeopardy clause. In addition, petitioner was given sufficient notice, by way of his indictment, that he was being charged with two separate acts of rape.

The district court did not err in denying habeas corpus relief to the petitioner. We therefore affirm the judgment of the district court.

Affirmed.