Ronald Dennis FENCL, Petitioner,

v.

Gordon ABRAHAMSON, Respondent.

No. 83–C–353.

United States District Court,
E.D. Wisconsin.

Feb. 7, 1986.

Ruth S. Downs, Asst. State Public Defender, Madison, Wis., for petitioner.

Daniel J. O'Brien, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

### I. PROCEDURAL BACKGROUND AND FACTS

CURRAN, District Judge.

Ronald Dennis Fencl, the petitioner in the above-captioned action, was convicted of first degree murder in violation of section 940.01 of the Wisconsin Statutes on June 9, 1978. He is currently serving a life sentence in state prison. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After his conviction, the Manitowoc County Circuit Court denied Fencl's motion for a new trial. The judgment and order were appealed to the Wisconsin Court of Appeals which certified the questions presented to the Wisconsin Supreme Court. That court affirmed the judgment and order of the trial court. *See State v. Fencl*, 109 Wis.2d 224, 325 N.W.2d 703 (1982). The respondent concedes that Fencl exhausted his available state postcon-

viction and appellate remedies before presenting his constitutional claims to this court. *See* Answer to Petition for Writ of Habeas Corpus at ¶ 2. *See also* 28 U.S.C. § 2254(b). He filed his petition in 1983. Then, in 1985, after the case was transferred to this court, the parties were allowed to rebrief the issues and address subsequent case law.

The Wisconsin Supreme Court recounted the following facts leading up to Fencl's conviction and sentencing:

Debra Sukowaty disappeared on September 24, 1977. On October 1, 1977, the police received a purse containing Sukowaty's identification and several other items which were found in a plastic bag in a nearby river. Among the items contained in the bag was a parking ticket, traceable to Ronald Fencl's car. Detective Geigel of the Two Rivers Police Department visited Fencl that same day to inquire about Sukowaty. Fencl stated that he did not know Sukowaty or anything about the items found in the river.

At approximately 4 p.m. on October 2, 1977, Geigel again visited Fencl. At this meeting Fencl told Geigel that he wanted to talk to his attorney and that he would get back to him. Half an hour later Fencl went to the police station. He told Geigel that he had found the items in his car and threw them into the river in order to avoid any trouble with the police. Geigel had to cut their conversation short because he received a call informing him that a body had been found in a nearby gravel pit. Fencl agreed to meet with him later that evening. In the meantime, the body was identified as Sukowaty. The police then impounded Fencl's car.

At 7 p.m. that same day, Fencl returned to the police station with his attorney, Steven Alpert. Fencl said nothing. His attorney spoke to Geigel only to ask why Fencl's car had been impounded. Two Manitowoc Police Department detectives talked to Fencl and gave him his *Miranda* rights. Fencl was allowed to leave while the investigation continued. On November 4, 1977, a criminal warrant was issued charging Fencl with first-degree murder. He was arrested the next day. Alpert represented Fencl until just after the preliminary hearing. At that time new counsel was substituted because it appeared that Alpert might be called as a witness against Fencl.

During the trial the state made several references to Fencl's pre- and post-*Miranda* silence. In his opening statement the district attorney referred to the 4 p.m. meeting on October 2, 1977, between Detective Geigel and Fencl. He said that Fencl did not want to answer too many questions and that Fencl wanted to talk to his attorney. Detective Geigel also testified about this statement. Geigel testified three times about his 7 p.m., October 2, 1977, meeting with Fencl and Alpert. Each time Geigel indicated that Fencl said nothing. In his closing argument the district attorney once again referred to the 4 p.m. meeting of October 2, 1977, between Geigel and Fencl when he stated:

"He [Geigel] said as long as your're not mixed up in the disappearance of Debbie Sukowaty we're not interested in prosecuting. As long as your [sic] not interested. As long as you're not involved in Debbie Sukowaty's disappearance, that's alright [sic]. We're not interested in prosecuting you. He made that quite clear. At that point Fencl said he wanted to talk to his lawyer, so Geigel left."

The jury found Fencl guilty of first-degree murder, and the court sentenced him to life imprisonment. Fencl moved for a new trial on September 4, 1979. During a hearing on this motion, it was revealed that Fencl's first attorney, Alpert, had engaged in some questionable practices in connection with his representation of Fencl. Nevertheless, the court denied Fencl's motion for a new trial by order entered October 27, 1980. Fencl's appeal of the judgment and the order was certified by the court of appeals and

accepted by this court pursuant to sec. 809.61, Stats.

*Id.* at 225–27, 325 N.W.2d at 705–06.

Fencl's petition raises three issues in support of his contention that his imprisonment is unconstitutional. They are:

I. Did the conviction in this case violate Mr. Fencl's Fifth Amendment privilege against incrimination, and his Sixth and Fourteenth Amendment rights to counsel because the prosecutor referred both in his opening and closing argument to Mr. Fencl's expressed desire upon being questioned to remain silent and to speak with his attorney, and because the prosecutor elicited multiple responses to the same effect from a prosecution witness, and were those violations reversible error?

II. Did pre-trial counsel's ineffective, incompetent, and disloyal conduct render Mr. Fencl's trial and conviction fundamentally unfair in violation of his due process rights under the Fourteenth Amendment?

III. Did the trial court commit reversible error in giving Wisconsin Jury Instruction #1100, since that instruction violated Mr. Fencl's constitutional right to have a jury decide each factual issue beyond a reasonable doubt, and it violated Mr. Fencl's due process right to have the prosecution carry the burden of proof beyond a reasonable doubt as to each factual issue?

Brief and Appendix in Support of Petition for Writ of Habeas Corpus at 3.

In ruling on these issues, this court must presume that the findings of fact of the state courts are correct. *See* 28 U.S.C. § 2254(d). The ineffectiveness of counsel claim, however, involves mixed questions of law and fact; although deference is still to be given to the state findings. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). The petitioner suggests that other findings can be made from the transcripts which would more fully explain the background of his claims. *See* 28 U.S.C. § 2254, Rule 7(b). However, neither of the parties has requested an evidentiary hearing, and this court finds that the state findings are fairly supported by the record and adequate to rule on the issues raised. *See generally Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Rogers v. Israel,* 746 F.2d 1288 (7th Cir.1984). When, as here, the issues involve federal constitutional rights, federal law must be applied. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

## II. FENCL'S PREARREST SILENCE

### A. State Decision

Fencl claims that his Fifth Amendment right not to incriminate himself, his Sixth Amendment right to assistance of counsel, and his Fourteenth Amendment right to due process were violated when the prosecution mentioned his prearrest silence and employment of an attorney during opening and closing arguments and when it elicited similar testimony from Detective Geigel, a prosecution witness. Fencl's silence was maintained during questioning prior to arrest by the authorities both before and after he had received *Miranda* warnings. The Wisconsin Supreme Court held that references to the post-*Miranda* silence was constitutional error, reasoning that: "It is fundamentally unfair and a denial of due process to assure a defendant through the *Miranda* warning that he has the right to remain silent and then penalize him for exercising that right." *State v. Fencl,* 109 Wis.2d 224, 233–34, 325 N.W.2d 703, 709–10 (1982). In coming to this conclusion the court relied on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), where the United States Supreme Court stated:

[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 618–19, 96 S.Ct. at 2245. *Doyle* dealt with postarrest silence and the prosecution's efforts to impeach a testifying defendant, but the Wisconsin court found the rationale applicable to Fencl's case, saying that: "Receipt of the *Miranda* warning is the important factor in the *Doyle* analysis, not whether the defendant has been arrested. Therefore, the *Doyle* rationale protects post-*Miranda* silence whether occurring before or after arrest." *Fencl,* 109 Wis.2d at 234, 325 N.W.2d at 710. The court concluded that the testimony concerning silence was introduced to tacitly imply Fencl's guilt and that because these references were used against Fencl, they constituted constitutional error. *Id.* at 235, 325 N.W.2d at 710.

Next, the Wisconsin Supreme Court considered the reference to Fencl's pre-*Miranda* silence. It was the first time the court had directly addressed this issue. The court conceded that "a strict interpretation of *Doyle* renders the due process rationale inapplicable," then framed the issue as "whether such references are violative of Fencl's Fifth Amendment privilege against self-incrimination." *Id.* at 236, 325 N.W.2d at 710. Reasoning that the Fifth Amendment protects a person from compelled self-incrimination at all times, the court held that "a person is entitled to the protection of the Fifth Amendment even prior to arrest or a custodial interrogation." *Id.* at 237, 325 N.W.2d at 711. Therefore, the state's reference to Fencl's prearrest, pre-*Miranda* silence was also deemed to be constitutional error. *Id.* at 238, 325 N.W.2d at 711.

Having found constitutional error, the court then considered whether the error was harmless beyond a reasonable doubt. The court examined the six impermissible statements within the context of the entire trial and in view of the factors set forth in *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) which are:

1. the frequency of the error,
2. the nature of the state's evidence against the defendant, and
3. the nature of the defense.

The court found that there was sufficient evidence to support Fencl's conviction and that the references to his silence did not have sufficient impact upon the jury to adversely affect its ability to evaluate his defenses fairly. *Fencl,* 109 Wis.2d at 239, 325 N.W.2d at 712. Therefore, the court held that "the state's references to Fencl's silence were too brief and unobtrusive to be prejudicial, and, accordingly, the constitutional error was harmless beyond a reasonable doubt." *Id.*

### B. Positions of the Parties

Fencl agrees with the holding of the Wisconsin Supreme Court that his rights under the Fifth and Fourteenth Amendments were violated by mention of his silence at his trial. In addition, he contends that his Sixth Amendment right to assistance of counsel was violated by the references to his prearrest desires to consult with his attorney. He asserts that none of these constitutional errors were harmless and that the Wisconsin court did not assign the prosecution the burden of showing beyond a reasonable doubt that these errors did not contribute to the guilty verdict.

The respondent (State) assumes that this court will adopt the Wisconsin Supreme Court's holding that the references to the post-*Miranda* silence violated Fencl's right to due process, but it objects to that court's expansive application of the Fifth Amendment to forbid mentioning pre-*Miranda* silence as being contrary to federal case law. *See, e.g., Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). The State also argues that Fencl waived his Fifth Amendment rights by giving statements on October 1 and 2. Finally, the respondent views the petitioner's Sixth Amendment claim as meritless since Fencl did not have a constitutional right to counsel at the prearrest stage. *See Sulie v. Duckworth,* 689 F.2d 128 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983). The State maintains that if this court finds any constitutional error, it should be deemed harmless beyond

a reasonable doubt as found by the Wisconsin Supreme Court under the test set out in *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

### C. Prearrest, Post-*Miranda* Silence

█ As a threshold matter, the State points out that Fencl failed to object at trial to any of the references to his silence. *See* Brief in Opposition to Petition for Writ of Habeas Corpus at 31. Due to this lack of contemporaneous objections, the pre-arrest silence issue could be barred in federal court under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, the fact that the Wisconsin appellate court considered the issue on its merits means that federal review is not foreclosed. *See Wainwright v. Greenfield*, ── U.S. ──, ── & n. 3, 106 S.Ct. 634, 637 & n. 3, 88 L.Ed.2d 623 (1986); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). (1981).

█ The first issue to be decided, then, is whether references at trial to Fencl's prearrest, but post-*Miranda* silence violated his right to due process as guaranteed by the Fourteenth Amendment. During the State's case-in-chief, Detective Geigel testified three times that after Fencl came to his office on October 2, 1977, and was given *Miranda* warnings, he chose to remain silent. *See State v. Fencl*, 109 Wis.2d 224, 233, 325 N.W.2d 703, 709 (1982). The Wisconsin Supreme Court's conclusion that these references did violate Fencl's right to due process is supported in federal law. *See, e.g., Wainwright v. Greenfield*, ── U.S. ──, ──-──, 106 S.Ct. 634, 637–39, 88 L.Ed.2d 623 (U.S.1986); *Dean v. Young*, 777 F.2d 1239, 1242 (7th Cir.1985). Thus, this court must also find constitutional error in this regard.

### D. Prearrest, Pre-*Miranda* Silence

Next, the court must determine whether references to Fencl's pre-arrest and pre-*Miranda* silence violated his right not to incriminate himself as guaranteed by the Fifth Amendment. This issue is more pro-blematic, since the court has not been presented with any authority directly on point. The United States Supreme Court has not addressed the issue of whether an accused's silence can be mentioned at trial when the defendant does not testify. The Court has decided that a prosecutor may impeach a defendant with prior silence, if the silence preceded the arrest and the *Miranda* warnings. *See Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). Impeachment from silence after arrest is also permissible, if the silence precedes the *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam). In these cases the Court analyzed the allegations of constitutional error by using a due process analysis, reasoning that the state may not advise a suspect that he has a right to remain silent and then turn around and use his silence against him. However, these recent decisions did not consider whether or under what circumstances prearrest and pre-*Miranda* silence may be protected by the Fifth Amendment. *See Jenkins*, 447 U.S. at 236 n. 2, 100 S.Ct. at 2128 n. 2. In *Jenkins*, the Court noted that: "This Court's decision in *Raffel v. United States*, 271 U.S. 494 [46 S.Ct. 566, 70 L.Ed.2d 1054] (1926), recognized that the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence." *Id.* at 235, 100 S.Ct. at 2127. The *Jenkins* Court advanced the following rationale to support its conclusion that prearrest silence can be used to impeach a testifying defendant:

In determining whether a constitutional right has been burdened impermissibly, it also is appropriate to consider the legitimacy of the challenged governmental practice. Attempted impeachment on cross-examination of a defendant, the practice at issue here, may enhance the reliability of the criminal process. Use of such impeachment on cross-examination allows prosecutors to test the credibility of witnesses by asking them to explain prior inconsistent statements and

acts. A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics. Once a defendant decides to testify, "[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.

Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility.

*Jenkins*, 447 U.S. at 238, 100 S.Ct. at 2129. (citations omitted).

 The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial, and prevents the prosecution from commenting on the silence of a defendant who asserts the right. *See Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965). In *Jenkins* the petitioner did not remain silent. He voluntarily took the witness stand in his own defense. Fencl, on the other hand, did not testify at his trial, so the same policy considerations do not apply. While it is clear that prearrest silence may be used to impeach the credibility of an exculpatory story offered at trial, it is not clear whether the silence can be mentioned when the defendant does not testify. The facts here do not show that Fencl made any affirmative waiver of his right to silence. On October 1 and 2 he did make contradictory statements about the items found in the river, but he never discussed knowing anything about the murder either before or during the trial. Because Fencl chose not to testify at trial, the State did not have occasion to try to impeach his credibility. This court, therefore, will adopt the rationale of the Wisconsin Supreme Court and rule that the references to Fencl's prearrest, pre-*Miranda* silence violated his right not to incriminate himself

as guaranteed by the Fifth Amendment. *Cf. United States v. Shue*, 766 F.2d 1122, 1132 (7th Cir.1985) (declining to extend permissible use at trial of postarrest silence to other than situations in which "the defendant offers his explanation as part of a deliberate defense strategy").

### E. Harmless Error

 Having determined that the references to Fencl's pre-arrest silence constituted constitutional error, this court must next determine whether this error was harmless. *See United States ex rel. Allen v. Franzen*, 659 F.2d 745 (7th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 444 (1982). Constitutional error is reversible error unless it is harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). The burden of proving a constitutional error harmless rests upon the government. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This determination must be reached on a case-by-case basis and requires an examination of criteria established by federal law. *See Chapman*, 386 U.S. at 20–22, 87 S.Ct. at 826–27. The respondent has submitted a copy of the transcript of the state court trial so that this court could review the entire record. *See United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Among the factors which the court must consider in a case such as this are:

1. the intensity and frequency of the reference,

2. who elected to pursue the line of questioning,

3. the use to which the prosecution puts the silence,

4. the availability to the trial judge of an opportunity to grant a motion for a mistrial or to give curative instructions,

5. the quantum of other evidence indicative of guilt.

*See Phelps v. Duckworth,* 772 F.2d 1410, 1413 (7th Cir.1985).

■ During the five-day trial there were six references to Fencl's prearrest silence:

Prosecutor during opening argument:

1. "On the next day which would have been Sunday [October 2, 1977], around 4:30, this would be before the detective, Detective Geigel knew there was even a body found out at the gravel pit. He went to talk to Ron Fencl again over at Mr. Dent's house. And this time Ron Fencl didn't want to answer too many questions. He said I want to talk to my lawyer first and then maybe I'll talk to you. So they left it at that. Then around 4:30, about a half an hour later, Ron came into the police station where Detective Geigel's office is located and he sat down and he said, well, I've talked to my lawyer and he gave me three choices."

Trial Transcript, Day 2, at 187–88.

Witness Bernard Geigel, testifying during the prosecution's case-in-chief:

2. "[Fencl] was very friendly. He said I want to talk to my lawyer and I'll get back to you later."

Trial Transcript, Day 3, at 177.

3. Q. "And did Mr. Fencl—did he come back at that time, at 7?" A. "Yes. He came back with his attorney Steve Alpert."

. . . .

Q. "And at that time did Mr. Fencl make any statements to you in regards to the missing girl?" A. "No sir."

Trial Transcript, Day 3, at 186–87.

4. Q. "What about the third meeting?" A. "The third meeting he said nothing."

Trial Transcript, Day 3, at 196.

The Court:

5. "You had another meeting with him?" A. "We had prearranged a meeting for 7 p.m., but at this time he came in with his attorney and he didn't

say a word; his attorney did all the talking."

Trial Transcript, Day 3, at 198.

Prosecutor during closing argument:

6. "He said as long as you're not mixed up in the disappearance of Debbie Sukowaty we're not interested. in prosecuting. As long as your [sic] not interested. As long as you're not involved in Debbie Sukowaty's disappearance, that's alright [sic]. We're not interested in prosecuting you. He made that quite clear. At that point Fencl said he wanted to talk to his lawyer, so Geigel left."

Trial Transcript, Day 5, at 15.

These six references to Fencl's prearrest silence were made without further emphasis. Except for the brief mentions in opening and closing arguments, they were all made during the testimony of one prosecution witness out of the twenty-four called by the State. This witness was Bernard Geigel, a police detective in Two Rivers, Wisconsin, who mentioned the silence as part of his narrative account of his contacts with Fencl after his parking ticket had been found with the victim's personal effects. The prosecutor elicited the statements about silence during the State's case-in-chief. He also made single references to it in his opening and closing arguments. In one other instance, Geigel responded to a question from the judge with a remark about Fencl's silence.

Counsel for the defendant attempted to justify his client's silence during his own closing argument. He explained:

John Q. Citizen, you and I, might act one way but if you had some problems in the past you might not want to tell the police officers right away everything you know about the first thing. Now we don't have to agree with that and we don't have to condone it, but people are like that. You know when they're first asked about something, I don't know anything, I haven't seen anything, I don't want to get involved."

Trial Transcript, Day 5, at 33.

As noted above, the remarks and testimony were not used to impeach a defend-

ant testifying in his own behalf. They were mentioned as part of a narrative of events leading up to Fencl's arrest. However, it could be said that statements about the silence were used in the nature of impeachment to impugn prearrest statements Fencl made to the authorities about the garbage bag found in the river and about his knowledge of the victim. The references were not offered as affirmative proof of any element of the crime.

Counsel for the defense did not make a motion for a mistrial in response to the impermissible statements. He did not even offer a contemporaneous objection, although he had interposed a continuing objection before the start of trial. *See* Trial Transcript, Day 1, at 8–10. He did make a Fifth Amendment objection out of the presence of the jury prior to the testimony of Detective Brey, who also could have testified to Fencl's "admissions" by silence. *See* Trial Transcript, Day 4, at 109. There is nothing in the record to indicate that Fencl asked for a curative instruction. The only directive given regarding silence was the standard jury instruction that nothing should be inferred from the fact that the defendant does not take the stand in his own behalf. *See* Trial Transcript, Day 5, at 52. The jury was also admonished not to consider the remarks of counsel as evidence. *Id.* at 49.

As both sides pointed out, all the evidence in this case was circumstantial. There was no eye witnesses, no confession, no murder weapon and no proposed motive. The strongest evidence against Fencl was the green garbage bag found by a boy fishing in the river. The bag, which had been weighted with rocks, contained shoes, a purse and other personal effects of the victim along with the parking ticket of the defendant. The evidence was less than overwhelming in this case, but it is not the sufficiency of the evidence which is at issue here. *See Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Rather, the question is whether these six references substantially impacted upon the jury's consideration of the defendant's guilt. *Cf. United States v. White,* 607 F.2d 203, 209–10 (7th Cir.1979), *cert. denied,* 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981). The State has demonstrated that these references were brief and isolated and of little importance in view of the record as a whole. While explicit statements obtained in violation of a defendant's constitutional rights might be used to affirmatively prove elements of a crime, silence is ambiguous and has less probative value. As Fencl's counsel pointed out in his closing statement, there are many reasons to maintain silence. Thus, the court finds that there is no reasonable possibility that the improper statements contributed to the conviction and that, therefore, the errors noted were harmless beyond a reasonable doubt.

### F. Sixth Amendment Claim

■ Having already decided that Fencl's Fifth and Fourteenth Amendment rights were violated at trial by the reference to his silence, the Wisconsin Supreme Court did not address the issue of whether Fencl's Sixth Amendment right to counsel was also violated by these references. *See State v. Fencl,* 109 Wis.2d 224, 232, 325 N.W.2d 703, 708 (1982). Fencl now argues that by mentioning his desire to have counsel present and his employment of an attorney, the State implied his guilt. The State does not agree and says that this issue can be "quickly disposed of" by reference to the Seventh Circuit's decision in *Sulie v. Duckworth,* 689 F.2d 128 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983).[1] *See* Brief in Oppo-

---

1. The main holding in *Sulie* is that evidence that a criminal defendant asked for a lawyer when he was first questioned is admissible as evidence of sanity. *Sulie,* 689 F.2d at 131. This holding was recently overruled by the United States Supreme Court in *Wainwright v. Greenfield,* —— U.S. at ——, 106 S.Ct. at 638 (U.S. 1986), where the Court decided that a defend-

ant's post-*Miranda* request for counsel could not be used at trial as affirmative evidence of sanity. To do so would violate the accused's right to due process. *Id.* at ——, 106 S.Ct. at 641. *Greenfield* did not address the issue of whether there is any constitutional protection for prearrest or pre-*Miranda* exercise of the right to counsel.

sition to Petition for Writ of Habeas Corpus at 21. In *Sulie,* the officer who questioned the defendant when he was in custody after his arrest was allowed to testify that Sulie asked to see an attorney. The court of appeals decided that, while evidence of Sulie's postarrest silence would not be admissible against him at trial, testimony concerning his request for a lawyer would be. The court reasoned that the Sixth Amendment right to counsel does not attach until a criminal prosecution has been commenced by the filing of a formal charge. Mere interrogation does not bring the right into play. *Sulie,* 689 F.2d at 129–30. However, in a subsequent decision the Seventh Circuit indicated that there are limits on the circumstances under which the prosecution may refer to a suspect's exercise of his right to counsel. In *Dean v. Young,* 777 F.2d 1239 (7th Cir.1985), the court rejected a similar Sixth Amendment claim,[2] but said that:

> A reference to a suspect's decision to retain counsel also draws into question rights secured by the due process clause of the Fourteenth Amendment. If the prosecutor had argued to the jury something along the line of: "The defendant went right out and got a lawyer, so you can be sure he knew he was guilty", Dean would have a strong argument. (We need not decide if it would be powerful enough.)

*Id.* at 1242.

During Fencl's trial all of the references made to his employment of an attorney related to the time before charges were filed against him. None of the references were as egregious as the hypothetical suggested in *Dean.* And, although some of the statements and testimony regarding his attorney related to times after Fencl was given *Miranda* warnings, he is not making a due process claim on this issue. Therefore, this court believes it is bound to follow the law of this circuit and hold that

Fencl's Sixth Amendment guarantees were not violated at trial by references to his exercise of the right to counsel prior to being charged with murder.

## III. ASSISTANCE OF COUNSEL

The second major issue raised by Fencl is whether ineffective assistance by his pretrial counsel rendered his trial fundamentally unfair in violation of his right to due process under the Fourteenth Amendment. The Wisconsin Supreme Court did not reach the issue of the constitutional violation because it found that the attorney's representation was sufficiently effective to satisfy Fencl's right to effective assistance of counsel. *State v. Fencl,* 109 Wis.2d 224, 232, 325 N.W.2d 703, 708 (1982).

In this proceeding Fencl complains of various conduct on the part of attorney Steven Alpert. His brief relates that he first contacted Alpert in connection with this incident on September 27, 1977. Fencl was not arrested until November 5, 1977. Because he was found to be indigent, the court appointed Alpert to represent him at the initial appearance. The representation continued until the end of the preliminary hearing on November 17, 1977, at which time trial counsel took over as sole counsel. *See* Brief and Appendix in Support of Petition for Writ of Habeas Corpus at 29. After Fencl was convicted, an evidentiary hearing was held on the posttrial motions during which Alpert and other witnesses testified as to Alpert's conduct. *See* Answer to Petition for Writ of Habeas Corpus at Exhibit K. In denying the motions, the judge concluded that: "advice to a defendant to remain silent or to suggest that the defendant give the police stories of other possible suspects to divert their attention from the defendant are not sufficient grounds to conclude the pre-trial counsel was incompetent or disloyal to the defendant." *Id.* at Exhibit E.

---

Therefore, *Greenfield* does not overrule *Sulie* on that issue.

**2.** *See also Sulie,* 689 F.2d at 133, n. 2 (Cudahy, J., dissenting) (supporting the proposition that a

defendant's Fifth and Fourteenth Amendment rights are violated when references are made to securing counsel).

Fencl admits that most of the conduct complained of occurred prior to the initiation of adversary judicial proceedings, so that the Sixth Amendment right to counsel would not apply. *See Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–64, 54 L.Ed.2d 424 (1977). Present counsel attempts to circumvent this problem by arguing that the Fourteenth Amendment provides an independent right to effective assistance of counsel through the Due Process Clause because Alpert's conduct so infected the trial that the proceedings were fundamentally unfair to Fencl.

▮▮ The court believes that the petitioner is delineating a distinction without a difference by assigning this violation to the Due Process Clause. It is long and well established that procedural safeguards included in the Bill of Rights such as the right to effective assistance of counsel are applicable to the states through the Due Process Clause. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). If there is no Sixth Amendment right to effective assistance of counsel, there is no such right guaranteed by the Fourteenth Amendment. Fencl may contend that Alpert's conduct or advice was used against him during the trial itself, but in this regard Alpert's conduct would be no different from that of any other adverse witness. Prior to the time a person is accused, the state need not guarantee any standard of assistance by counsel. *See Dean v. Young,* 777 F.2d 1239, 1242 (7th Cir.1985). *See also Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

▮▮ The only acts Fencl complains about which occurred after Fencl was accused, but before Alpert's representation ended, involve Alpert's alleged plan to write a book about the murder, tentatively entitled "Screwed." He is also alleged to have tried to sell information to the district attorney. The Wisconsin Supreme Court found this conduct "clearly undesirable," but found that Fencl had not demonstrated by clear and convincing evidence that Alpert had an actual conflict of interest.

*Fencl,* 109 Wis.2d at 232, 325 N.W.2d at 708. In this habeas action Fencl has not suggested how any alleged conflict undermined the reliability of any proceedings prior to Alpert's withdrawal as counsel or at trial. Furthermore, the court can find no mention of the book or the sale of information in the trial transcript. To prevail on a claim of ineffective assistance of counsel, a person seeking relief must show that (1) counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because Fencl has merely suggested the possibility of a conflict, he has not met his burden of demonstrating that the proposed book or sale of information had any effect on the jury's verdict. *See Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Accordingly, the court will rule that Fencl's right to due process and his right to effective assistance of counsel were not violated by the conduct of attorney Alpert.

## IV. BURDEN OF PROOF

▮▮ The final issue raised by Fencl in his petition is whether the giving of former Wisconsin Jury Instruction—Criminal 1100 at trial impermissibly shifted the burden of proof on the element of intent to the petitioner. This instruction directs that:

> While this intent to kill must be found as a fact before you can find the defendant guilty of murder in the first degree, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent. You cannot look into a man's mind to find out his intent. When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts. If one person assaults another vio-

lently with a dangerous weapon likely to kill, and the person thus assaulted dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended.

In July and August of 1985, this issue was rebriefed by the parties so that they could address the United States Supreme Court's decision in *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), where the Court held that, even though a jury is informed that a mandatory presumption which shifts the burden of proof on the element of intent to the defendant may be rebutted, the infirmity of such a charge is not cured. *Id.,* 105 S.Ct. at 1972–73. Fencl argued that this overruled the Seventh Circuit's holding in *Pigee v. Israel,* 670 F.2d 690, 694–95 (7th Cir.), *cert. denied,* 459 U.S. 846, 103 S.Ct. 103, 74 L.Ed.2d 93 (1982), where the court decided that Wisconsin Instruction 1100 did not impermissibly assign a burden to the accused. After the rebriefing had been completed, the Seventh Circuit decided that the narrow holding in *Francis* did not require it to overrule *Pigee. See Dean v. Young,* 777 F.2d 1239 (7th Cir.1985). The petitioner, therefore, concedes that this settles the issue. *See* Letter of Assistant State Public Defender Ruth Downs to Judge Curran (filed December 26, 1985).

Accordingly, this court finds that no constitutional error was committed by the state court in giving Instruction 1100 during the 1978 trial.

### ORDER

For the reasons stated above, the court ORDERS that Ronald Dennis Fencl's Petition for Writ of Habeas Corpus (filed March 3, 1983) IS DENIED.

IT IS FURTHER ORDERED that this action IS DISMISSED.

Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin this 7th day of February, 1986.