**Arnold MAURICIO, Jr., Petitioner,**

v.

**Jack R. DUCKWORTH, Indiana Attorney General, Respondents.**

No. S 85–523.

United States District Court,
N.D. Indiana,
South Bend Division.

May 2, 1986.

---

Arnold Mauricio, Jr., pro se.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by Arnold Mauricio, Jr., an inmate incarcerated at the Indiana State Prison, in Michigan City, Indiana. The matter is now before this court on respondents' motion to dismiss, filed as part of their Return to Order to Show Cause. In accord with the dictates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court.

A careful examination of the underlying state court record and the opinion of the Supreme Court of Indiana in *Mauricio v. State,* 476 N.E.2d 88 (Ind.1985), reveals that petitioner has exhausted his available state court remedies per 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Both sides having briefed their respective positions, this petition is now ripe for ruling.

Petitioner was convicted in a state court jury trial of aiding felony-murder and robbery, for which he received a determinate sentence of thirty (30) years. These convictions were affirmed on appeal by the Supreme Court of Indiana. Petitioner now brings this petition for a federal writ of habeas corpus.

Petitioner raises the following issue in this application for habeas relief:

(1) Petitioner's constitutional right to due process was denied when the prosecutor refused to inform the defense of his rebuttal witness.

## I.

Pursuant to Indiana statute I.C. § 35–5–1–1, petitioner informed the State of Indiana of his intent to use an "alibi" defense prior to the trial. In his notice he was required to set forth the exact place at which the petitioner claimed to be at the time of the incident, which he did. Petitioner in his notice sought reciprocal notice from the prosecutor. The prosecutor responded pursuant to the statute and provided petitioner with the information concerning the exact date, time and place of the incident.

Petitioner had also filed a motion for discovery previous to the trial requesting the names and addresses of witnesses the State intended to call at trial with their written statements or a summary of their oral statements. The State filed a motion for discovery requesting similar information. The court granted the State's motion for discovery. Petitioner filed a supplemental motion for discovery requesting exculpatory information. Petitioner next filed his response to the State's motion for discovery including a list of witnesses he intended to call including his alibi witnesses. The petitioner filed two motions for sanctions against the prosecutor for failure to comply with the discovery requests. The record is void of any order by the court granting petitioner's motions for discovery, but the petitioner claims that the court granted his motions orally. The prosecutor eventually provided petitioner with a list of fifty-nine (59) witnesses of which he called only twelve (12) at the trial, along with the rebuttal witness the prosecutor never disclosed to the petitioner prior to her testifying.

During the petitioner's case in chief he called Janice Tuttle, the mother of petitioner's girlfriend as a witness. Janice Tuttle testified that immediately prior to the specified time of the crime, between 9:15 and 9:30 P.M. on February 3, 1982, she personally observed petitioner at petitioner's residence along with her daughter, Lisa Michael.

After the petitioner had rested, the State called as a rebuttal witness Sharon McDonald. Sharon McDonald testified that Tuttle's testimony placing the petitioner at his residence at 9:30 P.M. on February 3, 1982 was preconcocted during a discussion between Lisa Michael and her mother on February 4, 1982 which McDonald overheard, and was untruthful. On cross-examination of McDonald, she testified that she had been contacted by the State in June of 1982. Petitioner then moved to strike the testimony of Sharon McDonald, or in the alternative moved for a mistrial. Petitioner argued in support that the State's use of McDonald's testimony was a violation of the discovery order. The State argued in response that it was not required to divulge its rebuttal witnesses. The trial court denied petitioner's motions. On appeal the Supreme Court of Indiana held that the trial court did not error in permitting the testimony by the rebuttal witness.

Respondents contend that the Indiana Statute for Alibi Notice is constitutional and provides due process. The respondents contend that under the analysis of *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), and more specifically the Seventh Circuit's holding in *Bruce v. Duckworth*, 659 F.2d 776 (7th Cir.1981), that the alibi statute in question is reciprocal and protects the defendant's due process rights.

In *Wardius v. Oregon, supra,* the Supreme Court addressed the issue of whether a State statute which required the defendant to disclose certain evidence in order to invoke his alibi defense, but did not require reciprocal discovery from the prosecution violated the defendant's rights under the due process clause. The Court held that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery

rights are given to criminal defendants. In discussing the concept that liberal discovery promotes the ends of justice best by allowing each party to obtain the maximum amount of information possible in order to prepare their cases and thereby reducing the possibility of surprise during the trial the Court said:

> The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in Williams, nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." [*Williams v. Florida*] 399 U.S. [78], at 82 (footnote omitted), 90 S.Ct. [1893], at 1896 [26 L.Ed.2d 446 (1970)].

Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, but cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it does speak to the balance of forces between the accused and his accuser. Cf. In re Winship, 397 U.S. 358, 361–364, 90 S.Ct. 1068, 1070–1073, 25 L.Ed.2d 368 (1970). The *Williams* Court was therefore careful to note that "Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant." 399 U.S., at 81 (footnote omitted), 90 S.Ct., at 1896. The same cannot be said of Oregon law. As the State conceded at oral argument, see Tr. of Oral Arg. 19, Ore-

gon grants no discovery rights to criminal defendants, and, indeed, does not even provide defendants with bills of particulars. More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense.

We do not suggest that the Due Process Clause of its own force requires Oregon to adopt such provisions. Cf. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State. (footnotes omitted)

*Wardius v. Oregon,* 412 U.S. at 474, 93 S.Ct. at 2211.

The respondents do not contest these principles but rather contend the Indiana statute has carefully provided for reciprocal discovery. The Seventh Circuit in *Bruce v. Duckworth, supra,* addressed the issue of whether the statute on its face denies criminal defendants due process, and found that it does not. The Supreme Court of Indiana in *State ex rel Keller v. Criminal Court of Marion,* 262 Ind. 420, 317 N.E.2d 433 (1974), applying the *Wardius* test held that the alibi statute was constitutional. Further, the Supreme Court of Indiana in addressing the same issue on direct appeal in *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042 (1978), held that the alibi statute does require reciprocal discovery to the extent reasonably possible.

The Indiana alibi statute, as set forth in I.C. § 35-5-1-1, which petitioner challenges reads:

35-5-1-1 [9-1631]. Notice to prosecuting attorney when evidence of alibi to be offered—Exception.—Whenever a defendant in a criminal case in a court other than that of a justice of the peace shall propose to offer in his defense evidence of alibi, the defendant shall, not less than ten [10] days before the trial of such cause, file and serve upon the prosecuting attorney in such cause a notice in writing of his intention to offer such defense. The notice shall include specific information in regard to the *exact place* at which time the defendant claims to have been at the time stated in the indictment or information as the time of such offense. The provisions of this chapter shall not apply in case the court sets the trial for a date less than fourteen [14] days ahead. [Acts 1935, ch. 228, § 1, p. 1198; 1974, P.L. 143, § 36, p. 604.] (emphasis added)

IC 35-5-1-2 placed a reciprocal burden upon the prosecutor:

35-5-1-2 [9-1632]. Request to prosecuting attorney for statement of exact date and place of offense—Second notice by defendant.—In the defendant's notice, required under this chapter, the defendant may also *expressly require* the prosecuting attorney to file and to serve upon the defendant or upon his counsel a specific statement in regard to the *exact date* which the prosecuting proposes to present at the trial as the date when, and the *exact place* which the prosecuting proposes to present at the trial as the place where the defendant was alleged to have committed or to have participated in the offense.

IC 35-5-1-3 placed equal sanctions upon the defendant or prosecutor upon their failure to comply with the above statutes:

Failure to file notices and statements—Evidence excluded.—In the event of the failure of the defendant to file and to serve the defendant's original notice, as prescribed herein or the defendant's second notice as prescribed herein, or in the event of the failure of the prosecuting attorney to file and to serve the prosecuting attorney's statement as prescribed herein, the court may in its discretion extend the time for filing the same. At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney the defendant's original notice of alibi as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant, exclude evidence offered by the defendant to establish an alibi. At the trial, if it appears that the prosecuting attorney has failed to file and to serve upon the defendant or upon his counsel the prosecuting attorney's statement as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the prosecuting attorney, exclude evidence offered by the prosecuting attorney to show that the defendant was at a place other than the place stated in the defendant's original notice and that the time was other than the time stated in the defendant's original notice. At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney(,) the defendant's second notice as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant, exclude evidence offered by the defendant to establish that he was at a place other than the place specified in the prosecuting attorney's statement, and that the time was other than the time stated in the prosecuting attorney's statement. [Acts 1935, ch. 228, § 3, p. 1198.]

The current alibi statutes are found at IC 35-36-4-1 et seq.

■ .In reviewing the Indiana statute in light of *Wardius* and *Bruce* it is clear that the statute presents a balance of discovery for both parties to the extent of which discovery is required, and on its face does not deny petitioner due process. Therefore, petitioner's argument of denial of due

process based upon the claim that the Indiana alibi statute is not reciprocal must fail.

## II.

The court must then turn to petitioner's due process claim grounded in the right to reciprocal discovery in general, under the Fourteenth Amendment. Petitioner filed a motion for discovery. He filed two verified motions for sanctions against the prosecutor for failure to comply stating the court orally granted the discovery motion. The respondents claim that the record is void of any order granting the motion. However, the record is also void of statements or evidence to the contrary. The verified pleading of the petitioner states the motion for discovery was granted orally. Nowhere in the record does the prosecutor dispute this, nor does the trial court state otherwise. At some point in time, particularly on July 20, 1982, the prosecutor acting on the representation of the petitioner's counsel that an oral order existed, recognizing some type of duty with regard to discovery, or in a "voluntary" action, filed a long witness list of fifty-nine (59) names, of which he called only twelve (12) at trial along with the rebuttal witness.

The respondents contend that petitioner "voluntarily" disclosed the names of his alibi witnesses. However, respondents have overlooked the fact that the petitioner was ordered by the court, in writing, to provide a list of witnesses, names and addresses, which the petitioner intended to call at trial for either direct or impeachment purposes. Petitioner complied with the order. Respondents' statement that petitioner "voluntarily" provided the names of the alibi witnesses is not accurate.

Respondents further argue since the alibi statute does not require the State to specify rebuttal witnesses nor did petitioner specifically request a list of rebuttal witnesses, under Indiana law the State was not required to provide such information. It is interesting to note the State's backdoor argument-claiming petitioner did not specifically request information on rebuttal witnesses since the State never complied with either of petitioner's motions for discovery or respond to his motions for sanctions. Respondents' argument based on that reason wholly fails to persuade this court. Likewise, respondents' reliance on the alibi statute as not requiring the State to provide rebuttal witness information must fail. This court has previously stated that the alibi statute is balanced to the extent that it requires reciprocal discovery. The statute neither requires the defense to list witnesses it expects to call to support the alibi, nor does it require the State to list rebuttal witnesses to the alibi. Even though the alibi statute does not require such discovery, it does not preclude the right of a criminal defendant to reciprocal discovery in his case.

The prosecutor stated that he had his first conversation with the rebuttal witness on June 29, 1982, and when filing his halfhearted attempt to respond to the petitioner's discovery request on July 20, 1982, in which he did not list the rebuttal witness, he indicated that he omitted her name, although he was fully aware of the fact that he would call her if the petitioner presented his alibi defense on the belief that "they have no right to know my rebuttal witnesses." Justice DeBruler, in his dissenting opinion in which Justice Prentice concurred, stated:

"Her omission from the list and the failure to disclose her before she was called to the witness stand were obviously intentional, and done in the belief that there was no legal requirement upon the prosecution to divulge her intended use as a witness. In this the prosecution was wrong."

*Mauricio v. State,* 476 N.E.2d at 95.

This court fully agrees with the analysis of Justice DeBruler. Petitioner sought discovery and sanctions for failure to comply with discovery. Petitioner disclosed, pursuant to court order, the witnesses he intended to call at trial, which list included his alibi witnesses. He also objected to the testimony of the rebuttal witness on the basis of the omission of her as a witness in the written response the prosecution did

file. Petitioner also moved to strike her testimony and for a mistrial. He was denied both motions.

The Supreme Court of Indiana, in the majority opinion, held that since petitioner's discovery request was not clear on the record and since there was no proof of request for a continuance when the testimony was offered there was no error. The Court cited the holding in *Reid v. State,* 267 Ind. 555, 372 N.E.2d 1149 (1978), wherein it states that where the record shows clearly that there was a request for discovery of witnesses and rebuttal witnesses were well known to the State, there is a duty to provide them, citing, *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the Court found applying the principle enunciated in *Morgan v. State,* —— Ind. ——, 440 N.E.2d 1087 (1982), that although discovery matters are generally discretionary with the trial court it is ordinarily considered improper for a trial court to allow a witness who was not listed in discovery to testify unless the remedy of a continuance is granted to the other party to meet such testimony, coupled with the holding in *Smith v. State,* —— Ind. ——, 439 N.E.2d 634 (1982), that an exception to this rule is where the witness is brought in on rebuttal, that the facts in this case did not violate petitioner's due process rights. This court respectfully disagrees.

The prosecution was fully aware of its intent to use the rebuttal witness long before the trial and special arrangements were made to transport the witness from California to Indiana for the trial. And as Justice DeBruler stated,

> In true "poker game" fashion she was dealt to the defense as a rebuttal witness on November 19, 1982. This maneuver of the prosecution denied reciprocal discovery rights to appellant. Knowledge of the prosecution's plan would have aided appellant in designing his defense, and that impingement could not be remedied by a continuance.

> *Mauricio v. State, supra,* 476 N.E.2d at 95, dissenting opinion.

Justice DeBruler then went on to cite four Indiana cases stating that the granting of a new trial is not foreclosed by these prior cases (which have held that rebuttal witnesses need not have been disclosed by the prosecution, even in the alibi situation) since in none of those cases was the scope of defense discovery so clearly beneath the level required by due process of law and the reciprocity measure that due process utilizes.

In *Reid v. State, supra,* the Supreme Court of Indiana held that a continuance was the appropriate remedy for an opponent's failure to comply with a discovery order. The Court held that a continuance was appropriate, assuming that the damage may, thereby, be averted without unreasonable delay or judicial waste. However, the *Reid* Court held that it is conceivable that the violation could be so misleading as to require exclusion of the concealed evidence, as being the only way to avoid a denial of the defendant's fair trial rights. *Id.,* 372 N.E.2d at 1155. The Court in the underlying opinion here found that there was no violation denying petitioner a fair trial, and thus, no requirement to exclude the evidence existed.

This court particularily notes the language in *United States v. Agurs, supra,* 427 U.S. at page 110, 96 S.Ct. at page 2400:

> Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file he should be presumed to recognize its significance even if he has actually overlooked it. Cf. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104. Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of evidence results in constitutional error, it is because of the character of the

evidence, not the character of the prosecutor. (footnote omitted)

■ This court concludes in light of the facts in this case that petitioner was entitled to reciprocal discovery in order to assure his due process rights. The prosecutor failed to disclose the rebuttal witness with the full intent not to do so. Although the alibi statute was applied in a balanced fashion, the discovery procedures were not equally applied. The trial court entered a written order granting the State's motion for discovery, and did not impose any reciprocal duty on the State, even in light of the motions for sanctions. Even if one were to assume there existed an oral order granting petitioner's motions for discovery the State failed to comply other than providing the list of fifty-nine (59) witnesses. The State was well aware of its intent to call the rebuttal witness long before the trial even though the State would only call the rebuttal witness in the event petitioner presented his alibi defense. Petitioner was entitled to reciprocal discovery and the failure to provide reciprocal discovery amounted to a violation of his due process rights.

■ Having determined that petitioner was entitled to the rebuttal evidence, this court must now determine whether the failure to disclose that information constituted a denial of fundamental fairness. This court must evaluate the failure to disclose the name of the rebuttal witness in the context of the entire record. *United States v. Agurs, supra.* There is no constitutional right to discover evidence favorable to the state in a criminal case. *Wardius v. Oregon* (cite omitted), so the inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence. *United States ex rel Jones v. DeRobertis,* 766 F.2d 270 (7th Cir. 1985) citing *United States v. White,* 454 F.2d 435 (7th Cir.1971), *cert. denied,* 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972). All rebuttal evidence is not discoverable, some simply is unknown or the relevance not ascertained soon enough to be of beneficial use to the opposing party.

In essence the petitioner claims that he was unfairly and prejudicially surprised by the State's rebuttal witness because he had made several tactical judgments—including the decision to assert the alibi defense—in reliance on the State's list of fifty-nine (59) witnesses. The State had the benefit of non-reciprocal discovery rights. In *Brady v. Maryland,* the Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Court further stated that a prosecution that withholds evidence on demand of accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect or a proceeding that does not comport with standards of justice ... *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196.

■ The line of cases on which the petitioner relies, *Brady, Aqurs,* and their progeny, involved the disclosure of exculpatory evidence. This case does not involve the failure to disclose exculpatory evidence, rather it involves the failure to disclose alibi rebuttal evidence. Neither does this case involve improper prosecutorial remarks as is the basis for the majority of the cases. The Seventh Circuit Court of Appeals in *United States v. Cerro,* 775 F.2d 908 (7th Cir.1985), stated at 916:

> Most cases of harmless error involve the erroneous admission of evidence favorable to the prosecution. As a practical matter, if the evidence of guilt that was neither erroneously admitted nor tainted by the erroneously admitted evidence is overpowering, and the tainted evidence neither probative nor inflammatory (inflammatory evidence might overbear the judgment of a lay trier of fact), so that the appellate court can safely conclude that the likelihood that the defendant would have been acquitted is very small—too small to warrant the delays

and other costs entailed by ordering a new trial—the error will be pronounced harmless (harmless beyond a reasonable doubt, if the appellate court is strongly convinced of its conclusion).

### III.

■ The standard this court must apply is whether the constitutional error in this case was harmless error beyond a reasonable doubt. *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Since *Chapman,* the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), *United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The question now becomes: with the disclosure of the rebuttal witness, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? *See, United States v. Hastings,* at 511, 103 S.Ct. at 1981, citing *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

To satisfy its burden, the prosecution must do more than demonstrate by circumstantial evidence that the defendant's guilt exists. Rather, the case against the defendant must be "overwhelming" in order to apply the harmless error rule. *United States ex rel Burke v. Greer,* 756 F.2d 1295 (7th Cir.1985); *Fencl v. Abrahamson,* 628 F.Supp. 1379 (E.D.Wis.1986). *See also U.S. ex rel Miller v. Greer,* 789 F.2d 438 (7th Cir. 1986).

It is the position of the petitioner that had he known of the rebuttal witness, he would not have presented an alibi defense since it was his belief that the state's case-in-chief was weak. A full summary of the facts is set forth in the State court opinion, and this court need not restate all those facts here. The facts relevant to petitioner which inculpate him are as follows. Two witnesses identified petitioner's brother as the trigger man, and the same two witnesses gave a description of the co-perpetrator which matched the petitioner. Petitioner was known to have been with his brother in the afternoon of the shooting. A .25 caliber pistol was the weapon used to kill the victim, and petitioner's brother testified that such a caliber weapon was in his household. A police officer testified that just minutes following the murder he stopped an individual on a snowmobile observed riding on a street in the vicinity of the crime and running a red light. The officer positively identified the operator of the snowmobile to be petitioner. He further testified that the snowmobile matched the description of the one stolen from the victim. The stolen snowmobile was found the next morning just one block from petitioner's home.

The Supreme Court of Indiana held that the appropriate step for petitioner to take if he was truly surprised by the rebuttal witness was to seek a continuance. Petitioner argued that a continuance would have been futile since he had already presented his alibi defense. However, if petitioner's alibi was true, a continuance would have given petitioner time to investigate the rebuttal witness, talk to his own alibi witnesses in detail and then challenge the credibility of the rebuttal witness. If on the other hand, petitioner would not have presented his alibi defense because it was a false alibi, petitioner does not have any right to present a false alibi.

Petitioner did present an alibi defense and the rebuttal witness was allowed to testify. The evidence was before the jury and the question for the jury was one of credibility and weight to be given to the witness' testimony.

This court finds that the failure to disclose the name of the rebuttal witness under the facts in this case was a violation of the due process clause. This court also finds in evaluating this case on the entire record that the undisclosed evidence was not exculpatory in nature or material to punishment, that the inculpatory evidence against the petitioner was overwhelming, that petitioner did not avail himself of the

opportunity to investigate the rebuttal witness, and that petitioner was not artificially restricted from obtaining the evidence testimony to the extent that he was in the best position to examine and prepare his alibi defense. There does not exist a substantial possibility that the error complained of affected the verdict or that the error denied the petitioner a fundamentally fair trial. The error was harmless beyond a reasonable doubt.

Although somewhat "ancient" now this court has been and is aware of the contents of an article by Honorable James Duke Cameron (and his law clerk) entitled "When Harmless Error Isn't Harmless", Arizona State University Law Journal, 1971, pp. 23–42. Notwithstanding the influences of that article, past and present, this court here concludes that the error here was, indeed, harmless beyond a reasonable doubt.

Accordingly, it is the order of this court that respondents' motion to dismiss be and is hereby GRANTED; writ is hereby DENIED; petition is ordered DISMISSED. SO ORDERED. Enter May 2, 1986.